United States District Court
Southern District of Texas
**ENTERED**
February 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **JOSE LUIS PEREZ, JR.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:21-CV-00109 |
| | § | |
| **RADOSLAW TYCZYNSKI,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff's Motion to Apply Texas Statute to Prove Up Medical Expenses (Dkt. 62), and three Motions to Exclude filed by Defendant (Dkts. 64, 65, 66). For the following reason, Plaintiff's Motion (Dkt. 62) is hereby DENIED. Defendant's Motions to Exclude (Dkts. 64, 65, 66) are hereby GRANTED.

## Background

This diversity case arises from a motor vehicle accident that occurred on October 15, 2019, resulting in alleged personal injuries to Plaintiff. The Parties previously stipulated to Defendant's liability, leaving only the issue of damages for trial. *See* (Dkt. 42.) Specifically, Plaintiff is left to show the reasonableness and necessity of his medical treatment and the costs incurred from injuries allegedly caused by the accident. (Dkt. 42 at 3.)

According to his most recent filing, Plaintiff seeks damages for (1) physical pain in the past and future; (2) mental anguish in the past and future; (3) physical impairment in the past and future; (4) medical expenses in the past and future; (5) lost wages; (6) cost of the suit; and

(7) property damage, including loss of use and/or diminished value.[1] (Dkt. 71.) Plaintiff claims that as a result of the accident, he incurred $236,889.62 in reasonable and necessary past medical expenses. (Dkt. 32.) Plaintiff also claims that the following, additional amounts would "reasonably compensate him" for the alleged injuries: (1) $114,000 for loss of earning capacity; and (2) $400,000 for past physical pain and mental anguish, physical impairment, and lost wages.[2] (Dkt. 32 at 3.)

## Discussion

### A. Plaintiff's Pending Motion (Dkt. 62)

Plaintiff accompanied his January 5, 2023 Advisory to the Court (Dkt. 61) with a Motion to Apply Texas Statute to Prove Up Medical Expenses (Dkt. 62). In this Motion (Dkt. 62), Plaintiff asks the Court to apply Section 18.001 of the Texas Civil Practice and Remedies Code in this trial to "create[e] an alternative and judicially economic means by which Plaintiff may prove up the reasonableness and necessity of his past medical expenses." (Dkt. 62 at 1.) Defendant argues that "[a]dmissibility of medical billing affidavits was not discussed at the hearing, nor was whether Plaintiff's billing affidavits (versus the admissible medical records) would be treated as prima facie evidence of 'reasonable and necessary' medical bills as provided by Texas Civil Practices Code Section 18.001." (Dkt. 69.) Furthermore, Defendant broadly argues that § 18.001 is inapplicable in federal court. *See* (Dkt. 74.)

---

[1] Plaintiff also seeks pre-judgement and post-judgment interest, and "[a]ll other relief, at law or in equity, to which Plaintiff is entitled." (Dkt. 71 at 1.)
[2] Plaintiff's filings do not clearly state whether he seeks $400,000 for *each* of these three claims, or if the $400,000 represents the total amount sought. The Court interprets this language to mean the latter, considering Plaintiff's live pleadings reflect that he seeks damages within a range of two hundred fifty thousand dollars ($250,000) and one million dollars ($1,000,000). *See* (Dkt. 54) (denying Plaintiff leave to amend his complaint to plead damages over $1,000,000).

This Court has not previously opined on the applicability of § 18.001 in such matters and takes the opportunity to join other courts in the Southern District of Texas to find that § 18.001 has no application in federal court.[3]

### 1. Overview on Section 18.001

Texas Civil Practice and Remedies Code § 18.001 "provides a mechanism by which a plaintiff in a personal injury case . . . can file an affidavit from a physician to establish the reasonableness and necessity of her treatment." *La Wanda Graham, v. Jamarcus Lewis, et al.*, 2023 WL 52047, at *1 (N.D. Tex. Jan. 4, 2023). This physician affidavit is submitted in lieu of live testimony on the necessity and reasonableness of a particular treatment, or the cost for that treatment. *Perez v. Williams*, 2022 WL 17351581, at *6 (Tex. App.—Fort Worth, Dec. 1, 2022) (internal quotations omitted) (citing *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011)) ("[a]lthough expert testimony is generally required to establish that a claimant's past medical expenses are reasonable and necessary, Section 18.001 . . . provid[es] for the use of affidavits to streamline proof of the reasonableness and necessity of medical expenses without bringing an expert to testify.")

> Section 18.001 of the Texas Civil Practice and Remedies Code reads:
>
> Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient

---

[3] *See, e.g. Rivera v. Autotransportes Fronterizos, M.G., S.A. De C.V.*, 2022 WL 3069290, at *1 (S.D. Tex. Aug. 3, 2022) (Alverez, J); *Lloreda v. Dolgencorp of Texas, Inc.*, 2022 WL 203258, at *2 (S.D. Tex. Jan. 24, 2022) (Edison, J); *Gonzalez v. Inter Mexicana De Transporte S.A. de C.V.*, 2021 WL 3816338, at *3 (S.D. Tex. July 22, 2021) (Kazen, J.); *Escobar v. Duke Realty Corp.*, 2021 WL 1326285, at *3 (S.D. Tex. Apr. 8, 2021) (Miller, J.); *Martinez v. Ritter*, 2021 WL 3913593, at *2 (S.D. Tex. Apr. 5, 2021) (Hittner, J.); *Brown v. Burlington Coat Factory of Texas Inc.*, 516 F. Supp. 3d 693, 695 (S.D. Tex. Jan. 28, 2021) (Eskridge, J.); *Akpan v. United States*, 2018 WL 398229, at *3 (S.D. Tex. Jan. 12, 2018) (Atlas, J.).

> evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary. The affidavit is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action.

TEX. CIV. PRAC. REM. CODE § 18.001. The question at issue is whether this Texas statute has any application in a federal court.

### 2. Legal Standard

When considering whether to apply state law, rule, or regulation in federal court, the "initial step is to determine whether, when fairly construed, the scope of [the Federal Rule] is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law."[4] *Rivera*, 2022 WL 3069290, at *3 (alteration in original) (citing *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011)). "In other words, when the federal rules answer a 'disputed question differently' than state rules, the federal rule prevails." *Id.* (citing *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) *as revised* (Aug. 29, 2019)). Only when a federal rule is inapplicable will courts "wade into *Erie's* murky waters . . ." *Klocke*, 936 F.3d at 245 (5th Cir. 2019) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 130 S. Ct. 1431, 1437 (2010)).

The *Erie* doctrine instructs that when federal courts exercise diversity jurisdiction over state-law claims, the court applies state substantive law, but federal procedural law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Classification of a law as "substantive" as opposed to

---

[4] Our sister courts have often jumped straight into the all too familiar *Erie* analysis. However, *Erie* is not implicated when a valid federal rule or statute directly governs the matter at issue. *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 798 (5th Cir. 2021) (citing *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)). Thus, the proper first step is to analyze whether a "direct collision" exists between a federal law, rule, or regulation and § 18.001. *See infra* at 5.

"procedural" can "sound[] simple and straightforward," but "is sometimes a challenging endeavor." *Lloreda v. Dolgencorp of Texas, Inc.*, 2022 WL 203258, at *2 (S.D. Tex. Jan. 24, 2022) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Federal courts make this determination by "first look[ing] to the final decisions of the state's highest court." *Id.* (citing *Baker v. RR Brink Locking Sys., Inc.*, 721 F.3d 716, 717 (5th Cir. 2013)). When the state's highest court has not opined on the procedural or substantive status of a state law, federal courts make an "*Erie* guess" to determine "as best it can, what the highest court of the state would decide." *Lloreda*, 2022 WL 203258, at *5 (quoting *Lampton v. Diaz*, 661 F.3d 897, 899 (5th Cir. 2011)).

### 3. Analysis

#### a. Direct Collision

The Court must first consider whether § 18.001 causes a "direct collision" with a federal rule. *See Rivera*, 2022 WL 3069290, at *3. In line with other courts in our district, the Court finds that it does.

First, § 18.001 causes a "direct collision" with at least two Federal Rules of Evidence. Texas state courts have clarified that "[a]n affidavit filed in compliance with section 18.001 is an exception to the hearsay rule." *Gunn v. McCoy*, 489 S.W.3d 75, 101 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018). Yet Federal Rule of Evidence 802 provides that hearsay is inadmissible unless a federal statute, the federal rules of evidence, or the Supreme Court states otherwise. FED. R. EVID. 802. Applying § 18.001 in federal court would therefore make a form of hearsay evidence admissible which would otherwise be barred by the Federal Rules of Evidence. *See Rivera*, 2022 WL 3069290, at *3. Thus, there is a direct conflict between a Texas statute—§ 18.001— and the federal rules—Rule 802—meaning that the federal rule prevails. *Id.*

Section 18.001 also directly conflicts with the requirements for expert testimony under the Federal Rules of Evidence. Here, Plaintiff intends to rely upon affidavits submitted under § 18.001 to fulfill his burden of demonstrating the reasonableness and necessity of his medical expenses. (Dkt. 62.) If applied, Section 18.001 would allow "a person to provide an opinion on the reasonableness and necessity of medical expenses without requiring a disclosure of that person's qualifications or potential bias." *Vazquez v. Aguilera*, 2021 WL 8945613, at *3 (S.D. Tex. Aug. 11, 2021). However, Federal Rule of Evidence 702 requires courts to evaluate expert qualifications and the reliability of methods relied upon by such expert before such evidence can be admitted in court. FED. R. EVID. 702. Section 18.001 thus prevents this Court from exercising its required gatekeeping function under Rule 702, creating "an exception to Rule 702's requirement that a person must be qualified as an expert before testifying in the form of an opinion, specifically on the issue of the reasonableness and necessity of medical expenses." *Vazquez* 2021 WL 8945613, at *3; *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993) ("the Rules of Evidence . . . assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

Second, § 18.001 also "directly collides" with at least two Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure 43(a), "the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." FED. R. CIV. P. 43(a). "Because an uncontroverted affidavit may be admitted into evidence under § 18.001 and serve as sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary, § 18.001 conflicts with the rule that testimony must be taken in open court." *See Rivera*, 2022 WL 3069290, at *3 (internal quotations omitted); *Vazquez*, 2021 WL 8945613, at *3

("Obviously, § 18.001 directly collides with Rule 43's general rule that a witness's testimony must be taken in open court, since the stated effect of § 18.001 is to allow a party to introduce witness testimony as to the reasonableness and necessity of medical expenses without presenting a witness at trial."). Thus, allowing Plaintiff's affidavits to stand in place of testimony in open court would directly collide with Rule 43(a).

Likewise, § 18.001 directly collides with Federal Rule of Civil Procedure 26(a)(2), "which provides for the designation of a parties' testifying expert witnesses." *Vazquez*, 2021 WL 8945613, at *3. When an affidavit is controverted, as Defendant has indicated it would do in this matter, "then the timelines for service strictly required under [§ 18.001] conflict[s] with the timelines for disclosure set by Federal Rule of Civil Procedure 26(a)(2)." *Vazquez*, 2021 WL 8945613, at *3 (citing FED. R. CIV. P. 26(a)(2)) ("A party must make these disclosures at the times and in the sequence that the court orders"); *see* § 18.001(e). Thus, the federal rules mandate a certain timeframe for expert disclosures that differs from the timeline set by § 18.001.

In short, the application of § 18.001 in federal court is the epitome of a "direct collision" between a state law and a federal rule.

### b. *Erie* Analysis

Even if there were no direct collision between the Federal Rules and state law, § 18.001 would still have no application in federal court under *Erie*. This Court need not make an *Erie* guess regarding the procedural or substantive characterization of § 18.001, as the Texas Supreme Court has already explicitly classified § 18.001 as a purely procedural statute. *See Gunn v. McCoy*, 554 S.W.3d 645, 674 (Tex. 2018) ("[w]e reiterate that an affidavit served under section 18.001 is purely procedural and does not amount to conclusive evidence of the expenses"); *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011) (classifying § 18.001 as "purely procedural").

Following the guidance of the Texas Supreme Court, the Court thus finds § 18.001 is purely procedural and therefore does not apply in federal court.[5]

Thus, the Court reaches the same conclusion either under its "direct collision" analysis or under the *Erie* doctrine: § 18.001 has no application in federal court. If Plaintiff wishes to provide opinion evidence on the necessity or reasonableness of medical records already admitted, he must do so through witness testimony at trial. Accordingly, Plaintiff's Motion (Dkt. 62) is denied.

### B. Defendant's Pending Motions (Dkts. 64, 65, 66)

The Court will now consider Defendant's three pending Motions to Exclude. *See* (Dkts. 64, 65, 66.) Considering the applicable law and the facts of this case, the Court finds that each of these Motions (Dkts. 64, 65, 66) should be granted.

#### a. Motion to Exclude Evidence of Damages for Lost Wages

Defendant's first motion asks the Court to prevent Plaintiff from introducing evidence related to his claim of lost wages. (Dkt. 64.) Defendant argues that while Plaintiff initially made a claim for lost wages in his First Amended Petition, neither this claim nor a computation for these damages appeared in Plaintiff's Rule 26 disclosures. According to Defendant, "Plaintiff has filed a total of five separate Rule 26 disclosures in this case . . ." and "[i]n all of these Rule 26 disclosures, Plaintiff has never included a claim for damages related to lost wages." (Dkt. 64.) Defendant claims that when they sought discovery regarding Plaintiff's income, earnings, and financial support, that Plaintiff objected that the information was not within the scope of discovery

---

[5] Before *Haywood*, some federal courts had held that § 18.001 was substantive. *See, e.g. Rahimi v. United States*, 474 F. Supp. 2d 825, 829 (N.D. Tex. Apr. 8, 2006). And even after the Supreme Court of Texas opined in *Haywood* and *Gunn* that § 18.001 is purely procedural, some federal courts choose to characterize § 18.001 as substantive. *See Carreon v. King*, 2016 WL 7669514 *4, n.1 (N.D. Tex. 2016) (collecting cases). But these courts are in the minority. In contrast, courts in the Southern District of Texas have consistently held that § 18.001 is purely procedural with sound evaluation and logic. This Court sees no need to depart from the general consensus at this time.

8 / 17

and irrelevant because "Plaintiff does not present a claim for lost wages at this time." (Dkt. 64 at 36.)

Plaintiff appears to argue that he provided sufficient notice that he was making a lost wages claim in his deposition, as he spoke to how the accident caused him to be "out of work for two years" and that "he and his wife were forced to close down their business. . ." (Dkt. 71 at 4.) And he states that "calculating the extent of impairment constitutes an exercise in uncertainty" and that he should be excused from presenting documentation of lost wages because "there were no documents." (Dkt. 71 at 4) ("Plaintiff is an undersophisticated [sic] individual running a business with his wife in deep south Texas. To not allow Plaintiff to testify regarding his lost wages and physical impairment that lead to his loss of earning capacity would be to punish a man for simply being unrefined in business accounting."). Plaintiff's only argument under the Rule 37 standard is that because Plaintiff testified, albeit unclearly, to the fact that he claimed lost wages in his May 13, 2022 deposition, that Defendant should have been on notice of this claim and is therefore not "surprised or prejudiced." (Dkt. 71 at 5.) The Court disagrees.

The Federal Rules of Civil Procedure (FRCP) provide regulations for conducting discovery in federal cases so that proceedings can move forward in both an organized and fair manner. In Rule 26, the FRCP requires that parties provide to each other *without request* a computation of each category of damages claimed, and "must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material." FED. R. CIV. P. 26(a)(1)(A). When answering interrogatories, parties are expected to respond "separately and fully in writing under oath . . . ." or to object to the interrogatory with specificity. FED. R. CIV. P. 33(b). A party who has made a disclosure under Rule 26(a) or "who has responded to an interrogatory" must "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material

respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). The FRCP also provides sanctions for parties who fail to adhere to its regulations. Under Rule 37(c)(1), "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

Plaintiff could have *initially* responded in his interrogatories that the requested records regarding any lost wages, time away from employment, or source of income do not exist, if that was the factual reality of Plaintiff's position. But he did not do so. Instead, Plaintiff repeatedly objected to Defendant's reasonable requests to garner information regarding Plaintiff's lost wages claim by stating that *"Plaintiff does not present a claim for lost wages at this time."* (Dkt. 64.) Plaintiff objected to Defendant's request to identify the source of his income or financial support he has received since his accident. (Dkt. 64 at 2.) He objected to disclosing whether he missed time from his employment because of the accident. (Dkt. 64 at 3.) And he objected to Defendant's request that Plaintiff sign an authorization so that Defendant could access Plaintiff's Social Security Earnings Information to ascertain Plaintiff's potential lost wages. (Dkt. 64 at 4.) In each response, Plaintiff reiterated that Defendant's request was not within the scope of discovery because the information was not relevant, as he did not "present a claim for lost wages at this time." These objections were made in April of 2022. Perhaps Plaintiff did not believe he was presenting a claim for lost wages at that time. But as soon as he determined that he was making such a claim, he had the obligation to affirmatively correct his disclosures to Defendant.

Applying Rule 37, Plaintiff should not be allowed to assert evidence of his lost wages claim unless his failure to supplement his misleading interrogatories and his failure to disclose his calculation of his lost wages claim was "substantially justified or [] harmless." FED. R. CIV. P. 37(c)(1). To determine whether Plaintiff's violation of Rule 26 was justified or harmless, courts must consider four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bitterroot Holdings, L.L.C. v. MTGLQ Invs., L.P.*, 648 F. App'x 414, 419 (5th Cir. 2016) (quoting *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

Evidence of Plaintiff's alleged lost wages is certainly important to this case, at it would determine whether he could ultimately recover damages on this claim. However, Defendant would be prejudiced by inclusion of this evidence. Defendant has relied on Plaintiff's answers to the interrogatories sent to be truthful. Because of Plaintiff's affirmation, under oath, that he was not seeking lost wages, Defendant could not and did not receive the discovery necessary to defend against such a claim. And, Defendant has no way to contest Plaintiff's assertion that he suffered $440,000 in lost wages given that Plaintiff has provided no indication of how he came to that number.

Additionally, Plaintiff's explanation for his failure to disclose his computation of damages for this claim and his failure to disclose that he was indeed pursuing a lost wages claim is unconvincing. The entirety of Plaintiff's argument as to why he did not include any details on how he computed the $440,000 he seeks for lost wages is that doing so would be an "exercise in uncertainty." (Dkt. 64 at 5.) Plaintiff argues that he failed to produce the documents that Defendant requested because there were no documents. If this was indeed true, Plaintiff still had an

affirmative obligation to amend or supplement his interrogatory responses to *both* clarify that he was pursuing his lost wages claim, and that no documentation to support this claim exists.

Plaintiff claims that Defendant knew he was seeking damages for lost wages. Yet in the Joint Proposed Pretrial Order, "lost wages" is not included in Plaintiff's issues of law. (Dkt. 37 at 7.) Thus, Plaintiff will not be permitted to pursue a claim for lost wages at trial, and any evidence of lost wages is hereby excluded.

### b. Motion to Exclude Evidence of Property Damage

Defendant also motions to exclude evidence of property damage. (Dkt. 65.) According to the Joint Proposed Pretrial Order, Plaintiff seeks damages for injury to his personal property that can be classified as "valuation damages, repair damages, and loss of use damages." (Dkt. 37 at 9.) Plaintiff has never clarified the type of property damages he seeks. He has also never, according to Defendant, included a claim or computation for these damages in his Rule 26 disclosures. (Dkt. 65.) The Court can speculate that this property damage claim is for the damage Plaintiff sustained to his vehicle in the accident. But, according to Defendant, Plaintiff has already settled his claim for property damage with his insurer.

Again, Plaintiff has not made proper disclosure under Rule 26 to Defendant, and the result is that Rule 37(c)(1) applies. At this late stage of litigation, there is no substantially justified reason for Plaintiff's failure to identify what property was damaged or how much he seeks in compensation. Accordingly, Plaintiff will not be permitted to pursue a claim for property damage at trial, and any evidence of property damage is hereby excluded.

### c. Motion to Exclude Evidence of Damages for Loss of Earning Capacity

Finally, Defendant motioned for the Court to exclude evidence of damages for Plaintiff's claim of lost earning capacity. (Dkt. 66.) Defendant argues that "[p]ursuant to his First Amended

Petition, the live pleading in this case, Plaintiff . . . does not state a claim for damages for loss of earning capacity." (Dkt. 62.) Additionally, Defendant claims that Plaintiff has never included a claim for damages related to lost earning capacity in any of the Rule 26 disclosures in this case. *Id*. Finally, Defendant claims Plaintiff failed to provide a computation of damages for loss of earning capacity as required under FRCP 26.

Defendant is correct that Plaintiff failed to plead damages for loss of earning capacity.[6] (Dkt. 1, Attach. 3.) FRCP 8 mandates that pleadings which state a claim for relief must contain "a demand for the relief sought . . ." FED. R. CIV. P. 8(a)(3). It is true that Rule 8's pleading standard "is a liberal one." *ResMan, LLC v. Karya Prop. Mgmt., LLC*, 2020 WL 5884798, at *2 (E.D. Tex. Oct. 1, 2020) (quoting *Jiminez v. Regius Verus Foods, LLC*, 2015 WL 128157, at *1 (W.D. Tex. January 2, 2015)). However, there is nothing in Plaintiff's Original Petition (Dkt. 1, Attach. 3) that indicates Plaintiff was seeking damages for loss of earning capacity. And, Plaintiff *pled* no facts regarding his inability to work post-accident from which to construe a claim of loss of earning capacity.[7] *Cf. ResMan, LLC*, 2020 WL 5884798, at *2 (finding that an unpled damages category was nevertheless recoverable, because of the specificity of facts included in the complaint). No factual assertions are included regarding Plaintiff's employment history to indicate that he had "earning capacity" that could be lost.

---

[6] Once more, Plaintiff's First Amended Petition only pled damages for: "[1] Physical pain in the past and future; [2] Mental anguish in the past and future; [3] Physical impairment in the past and future; [4] Medical expenses in the past and future; [5] Lost wages; [6] Costs of suit; [7] Property damage, including loss of use and/or diminished value; [8] Pre-judgment and post-judgment interest; and [9] All other relief, at law or in equity, to which Plaintiff are entitled." (Dkt. 1, Attach. 7.)

[7] Plaintiff might have testified to these facts in his deposition, but deposition testimony cannot transform a deficient pleading into a well-pled claim.

Plaintiff argues that his properly pled claim of physical impairment can also include the economic damage category of loss of earning capacity. (Dkt. 71 at 2.)[8] Yet this assertion is contrary to interpretations of "physical impairment" claims from Texas state courts. Loss of earning capacity claims assess Plaintiff's "capacity to earn a livelihood prior to injury and the extent to which the injury impaired that capacity." *Kim v. Am. Honda Motor Co.*, 2022 WL 16752142, at *11 (E.D. Tex. Nov. 7, 2022). In contrast, physical impairment claims focus on Plaintiff's inability to enjoy non-work related activities "such as sports, hobbies, or recreational activities." *Patlyek v. Brittain*, 149 S.W.3d 781, 787 (Tex. App.—Austin, 2004) (citing *Plainview Motels, Inc. v. Reynolds,* 127 S.W.3d 21, 38 (Tex. App.—Tyler 2003) ("By focusing on activities unrelated to work, a reviewing court can distinguish losses comprising physical impairment from those comprising lost wages or earning capacity.").

Claims of physical impairment and loss of earning capacity are two, distinct claims. *Cf. PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 514 (Tex. App.—Houston [14th Dist.] 2016) (noting that physical impairment claims are also known as loss of enjoyment of life claims, and that the claim "encompasses the loss of the injured party's former lifestyle.") (citing *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 772 (Tex. 2003); *Clayton v. Wisener*, 190 S.W.3d 685, 697 (Tex. App.—Tyler, 2005) (citing *Koko Motel, Inc. v. Mayo,* 91 S.W.3d 41, 51 (Tex. App.—Amarillo, 2002) ("Lost earning capacity concerns the impairment to one's ability to work . . . . [and] entails the consideration of what the plaintiff's capacity to earn a livelihood actually was and assesses the extent to which it was impaired.").

---

[8] Plaintiff points to his own deposition testimony, where he disclosed that he was unable to work after the accident and even today cannot, allegedly, perform his job duties at the level he did prior to the accident. (*Id.* at 4.)

14 / 17

Allowing evidence that would properly be presented under a claim of loss of earning capacity as evidence relevant to a claim of physical impairment undermines the distinction between these two categories of damages. Indeed, if loss of earning capacity was merely a type of economic damage covered by physical impairment claims, there would be no need for the separation of these claims at all—a plaintiff claiming that he could no longer work or could not work at the same level as before an accident would have no need to separately plead loss of earning capacity and would instead broadly plead physical impairment. In line with this logic, the Texas Supreme Court has noted that "the effect of any physical impairment must be substantial and *extend beyond* . . . diminished earning capacity and that a claimant should not be compensated more than once for the same elements of loss or injury." *Golden Eagle Archery, Inc.*, 116 S.W.3d at 772 (emphasis added) (finding that loss of earning capacity is a claim distinct from physical impairment).

Ultimately, Plaintiff's claim for damages related to loss of earning capacity is unpled. Plaintiff *has* pled a claim for damages related to physical impairment, but this claim is limited to non-work-related activities. *See Gordon v. Redelsperger,* 2019 WL 619186, at *14 (Tex. App.—Fort Worth, 2019) ("physical impairment requires an impairment impacting a person's enjoyment of life, but that impairment must have a physical cause"). Accordingly, Plaintiff will not be permitted to pursue a claim for loss of earning capacity at trial, and any evidence of loss of earning capacity is hereby excluded.

### C. Clarification Regarding Plaintiff's Preadmitted Exhibits 1-36

The Court gathers from the numerous recent filings and advisories in this matter that there appears to be confusion at the difference between *admitting* exhibits into evidence and the weight or persuasiveness of the *substance* that that exhibit contains. The Court will briefly clarify.

On December 15, 2022, the Court ordered that if there was any dispute as to the admissibility of Plaintiff's proposed medical records and medical billing records exhibits, that Defendant must provide briefing on these arguments to the Court by December 29, 2022. (Dkt. 59.) That date came and went with no response from Defendant, so on January 5, 2023, the Court admitted Plaintiff's exhibits one through thirty-six. (Dkt. 60.) By pre-admitting these exhibits, the Court merely avoids the technical process of admitting the exhibit on the day of trial; at trial, Plaintiff need not approach a witness with the exhibit and use that witness to lay the proper foundation for the exhibit. *See* FED. R. EVID. 901 ("Authenticating or Identifying Evidence). That these thirty-six (36) medical record exhibits have been admitted into evidence only means that we are past the stage of objecting to the authenticity of the exhibits. It does not mean that the Court will apply a particular weight to the exhibit or accept them as prima facie evidence that the expenses incurred were reasonable and necessary.

To the extent that Plaintiff's Exhibits 1 through 36 contain § 18.001-type affidavits that relate to the necessity or reasonableness of Plaintiff's care or bills—and are not merely affidavits from custodians of record that are swearing to the authenticity of such record—these affidavits are hereby struck from the record.

## Conclusion

The Court has now instructed the Parties on numerous occasions that they must meet and confer to streamline what should have been administrative issues prior to trial. It goes without saying that the Court expected the Parties to act in good faith in accomplishing the outlined objectives. Yet the Parties' inability to properly communicate without asking the Court to directly intervene is frustrating the resolution of this dispute.

Lawyers take an oath before practicing in this Court that they will conduct themselves with integrity and civility in dealing with and communicating with the Court and other parties. At this time, the Court cannot say whether either Party is living up to their obligations under this oath. The Parties are hereby warned: continued failure to follow explicit Court Orders will be grounds for future sanctions.[9]

Plaintiff's Motion (Dkt. 62) is hereby DENIED. Defendant's Motions to Exclude (Dkts. 64, 65, 66) are hereby GRANTED.

IT IS SO ORDERED.

SIGNED this February 15, 2023.

Diana Saldaña
United States District Judge

---

[9] It should not be forgotten that failure to obey scheduling orders, or other pretrial orders, can be grounds for sanctions. *See* FED. R. CIV. P. 16(f)(1)(C). Going forward, the Court will order sanctions if it finds that either Party has failed to obey a scheduling or other pretrial order willfully or not in good faith.